IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BRYAN K. BROWN,                                    Case No. 3:13-cv-02051-MA

               Plaintiff,                     OPINION AND ORDER

    v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

               Defendant.

GEORGE J. WALL
1336 E. Burnside, Suite 130
Portland, OR 97214

    Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
District of Oregon
ADRIAN L. BROWN
RONALD K. SILVER
Assistant United States Attorneys
1000 S.W. Third Ave., Suite 600
Portland, OR 97204

LARS J. NELSON
Social Security Administration
Office of the General Counsel
701 Fifth Ave., Suite 2900, M/S 221A
Seattle, WA 98104-7075

    Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Bryan K. Brown seeks judicial review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C §§ 401-403, and application for Supplemental Security Income (SSI) disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons that follow, I reverse and remand for further administrative proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was injured on September 13, 2005, while working as an arborist when a tree fell on him, fracturing his pelvis in multiple places and tearing his urethra. On September 15, 2005, plaintiff underwent a closed reduction and percutaneous pinning of his right sacral fracture, with external fixators, and the urethral tear was repaired. Plaintiff was discharged to a skilled nursing facility. While there, an infection developed around the external fixator pin site and plaintiff was given antibiotics. The infection appeared to have resolved, and plaintiff was discharged.

On October 18, 2005, plaintiff sought emergency treatment for intractable pain, fevers, chills, and sweats and appeared in moderate distress. After cultures were positive for Staphylococcus aureus (MSSA), plaintiff was diagnosed with osteomyelitis

(infection of the bone), and his external hardware was surgically removed and the pin tracts debrided. Plaintiff was admitted to a skilled nursing facility were he received intravenous (IV) antibiotics for six weeks and physical rehabilitation. Plaintiff was discharged from the nursing facility in December of 2005. Tr. 623, 656.

In January of 2006, plaintiff was encouraged to continue physical therapy, and was able to ambulate with use of a cane. Plaintiff was released to sedentary work at that time. Tr. 647-49. In May of 2006, plaintiff requested that his workers compensation claim be closed, and he was released to a trial of unrestricted work so that he could pursue employment as a landscaper. Tr. 641. Plaintiff was advised to wean off his opiod medication. Tr. 642.

Plaintiff had several unsuccessful work attempts in 2007 and 2008. In the fall of 2009, plaintiff was receiving in-patient treatment for methamphetamine abuse at the Portland Rescue Mission. On September 29, 2009, plaintiff sought emergency treatment for extreme pain, chills, and tenderness in his hip and gluteus maximus. A CT scan of the pelvis showed sacroiliac fixation screw loosening with cortical erosions. Further evaluation showed Methicillin-sensitive Staphylococcus aureus infection with osteomyelitis, sacroiliac joint septic arthritis, and bacteremia and he was hospitalized. On October 2, 2009, plaintiff's deep hardware was removed, and he was sent to a skilled nursing facility

for a seven week course of IV antibiotics and rehabilitation.    On November 19, 2009, plaintiff was prescribed four weeks of oral antibiotics, he was released from the nursing facility, and plaintiff continued substance abuse treatment at Central City Concern.

Plaintiff protectively filed an application for DIB on December 10, 2009, and protectively filed an application for SSI on June 19, 2009.   In both applications, plaintiff alleged disability beginning September 13, 2005, due to arthritis in his pelvis, and osteomyelitis.   Plaintiff's claims were denied initially and upon reconsideration.   Plaintiff filed a request for a hearing before an administrative law judge (ALJ).   An ALJ held a hearing on May 11, 2012, at which plaintiff appeared with his attorney and testified. Vocational expert, C. Kay Wise, and lay witness, Douglas L. Brown, also appeared at the hearing and testified.   On June 29, 2012, the ALJ issued an unfavorable decision.   The Appeals Council denied plaintiff's request for review, and therefore, the ALJ's decision became the final decision of the Commissioner for purposes of review.

Born in 1972, plaintiff was 32 years old on the alleged onset date.   Plaintiff completed school through the tenth grade, can communicate in English, and has past relevant work as a foreman/lead worker on an assembly line.   Plaintiff has a history

of methamphetamine abuse and asserted at the May 11, 2012 hearing that he has been clean and sober for three and a half years.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520; 416.920. Each step is potentially dispositive.  The claimant bears the burden of proof at steps one through four.  *See Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through September 30, 2007. A claimant seeking DIB benefits under Title II must establish disability on or prior to the last date insured.  42 U.S.C. § 416(I)(3); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since his alleged onset of disability. At step two, the ALJ found that plaintiff had the following severe impairments: chronic right posterior pelvic pain status post pelvic fractures and urethral transaction; history of osteomyelitis; hepatitis C; and history of polysubstance abuse.  At step three,

the ALJ found that plaintiff's impairments, or combination of impairments, did not meet or medically equal a listed impairment.

The ALJ assessed plaintiff with a residual functional capacity (RFC) to perform light work, except that plaintiff can walk up to two hours in an eight hour day for no more than 15 minutes at a time, can stand for four hours for no more than one hour at a time, and has no sitting limitations; he can occasionally climb ramps and stairs; he can never climb ladders, ropes or scaffolds; he can occasionally stoop, kneel, crouch, crawl; he has no balancing limitations; and he cannot be exposed to industrial hazards such as moving machinery or unprotected heights.

At step four, the ALJ found plaintiff is unable to perform any past relevant work.  At step five, the ALJ concluded that considering plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that plaintiff can perform, such as production assembly inspector, hardware assembler, and hand packager. Accordingly, the ALJ concluded that plaintiff has not been under a disability under the Social Security Act from September 13, 2005 through the date of the decision.

## ISSUES ON REVIEW

On appeal to this court, plaintiff contends the following errors were committed: (1) the ALJ failed to properly evaluate and include physical limitations described by treating physician Jeanne

H. Button, M.D.; (2) the ALJ failed to properly evaluate his testimony; and (3) the ALJ failed to properly evaluate the lay testimony of Douglas L. Brown.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159 (internal quotations omitted); *Valentine*, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Batson v. Commissioner Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

////

////

**DISCUSSION**

I.    **Standards for Evaluating Physician's Opinions**

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008). To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014). When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory. *Taylor v. Commissioner Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011).

Plaintiff complains that the ALJ improperly rejected the opinion of Jeanne H. Button, M.D., his treating physician. According to plaintiff, the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Button's limitations in favor of examining physician John Hamby, M.D. Plaintiff is correct.

On March 5, 2010, plaintiff established care with Dr. Button, who performed a comprehensive evaluation and reviewed plaintiff's medical records. Tr. 585. The March 5, 2010 treatment note indicates that plaintiff informed Dr. Button that his pain averaged

a three on a 10-point scale, and varied from zero to six depending on his activity; that he can sit comfortably; can stand for an hour; and walk for 10 blocks without increased pain.  On physical exam, Dr. Button noted that plaintiff had a steady gait, with a single point cane in his right hand, with strength at a four of five on the right side, and five of five on the left.  Tr. 588. Dr. Button opined that plaintiff's 2009 infection was related to the 2005 workplace injury, and that plaintiff's 2009 infection has left him with right sacroiliac joint arthritis, pain and decreased hip/sacroiliac range of motion in the surrounding muscles.  Tr. 589.  Dr. Button assessed plaintiff's functional limitations as follows:

> standing up to 1 hour at a time, up to 4 hours in a day, walking up to half mile.  Occasional bending.  No stooping, crouching or crawling. Occasional lifting up to 30 pounds from waist level.

Tr. 589.

In the decision, the ALJ briefly summarized Dr. Button's limitations.  Tr. 17.  The ALJ did not otherwise discuss Dr. Button's opinion, except to note that Dr. Button's opinion supported the limitations described by examining physician John Hamby, M.D.

On February 8, 2012, Dr. Hamby conducted a comprehensive musculoskeletal evaluation, including reviewing plaintiff's medical record and interviewing plaintiff.  During Dr. Hamby's evaluation,

plaintiff indicated that he can walk for 10 to 15 minutes, stand for one hour, and has no problems sitting.  Plaintiff informed Dr. Hamby that lifting is "touch and go," and that his maximum lifting is 20 pounds without increased symptoms.  Dr. Hamby diagnosed plaintiff with "ongoing right lower back pain, with ample objective findings to support the subjective symptomatology," history of two episodes of osteomyelitis, and non-union of the right sacroiliac joint.   Tr. 546.   Dr. Hamby assessed plaintiff's functional capacities as follows:

1.   Maximum standing/walking capacity: Walking is limited to 15 minutes at a time, maximum two hours per day.  Standing is limited to one hour at a time, and four hours per day.
2.   Maximum sitting capacity: no limitations.
3.   Assistive devices: none necessary.
4.   Maximum lifting/carrying capacity: 20 pounds occasionally and 10 pounds frequently.
5.   Postural activities: climbing, stooping, kneeling, crouching, and crawling are limited to an occasional basis, balancing is unlimited.
6.   Manipulative activities: no limitations.
7.   Workplace environmental activities: no limitations.

Tr. 546.

The ALJ gave "great weight" to Dr. Hamby's opinion and "little weight" to the agency reviewing physician who opined that plaintiff could perform sedentary work.[1]  Tr. 18, 523-30.  Basing plaintiff's RFC largely on Dr. Hamby's opinion, the ALJ limited plaintiff to light work, with the following restrictions:

---

[1]I note that Dr. Hamby is the only physician to opine that plaintiff can perform light work.

plaintiff can walk up to two hours in an eight hour day for no more than 15 minutes at a time, can stand for four hours for no more than one hour at a time, and has no sitting limitations; he can occasionally climb ramps and stairs; he can never climb ladders, ropes or scaffolds; he can occasionally stoop, kneel, crouch, crawl; he has no balancing limitations; and he cannot be exposed to industrial hazards such as moving machinery or unprotected heights.  Tr. 15.

To the extent that Dr. Hamby and Dr. Button's opinions are consistent with respect to walking and standing, the ALJ's findings are supported by substantial evidence, and the ALJ appropriately incorporated those limitations into the RFC.  However, Dr. Hamby and Dr. Button's opinions conflict with respect to limitations on stooping, crouching, crawling, lifting, and whether plaintiff requires the use of a cane.  *Batson*, 359 F.3d at 1195 (ALJ must resolve conflicting medical opinions).  The ALJ's failure to provide any rationale as to why Dr. Button's limitations were given less weight than those of Dr. Hamby is error.  As will be discussed below, plaintiff's use of a cane may greatly impact the disability determination at Step Five.

In short, the ALJ erred by failing to resolve the conflicting medical evidence and failing to identify specific and legitimate reasons for discounting Dr. Button's opinion.  *Valentine*, 574 F.3d at 692 (ALJ must provide specific and legitimate reasons to credit examining physician over treating physician when their opinions conflict).

////

II.  **Plaintiff's Testimony**

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Commissioner Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim*, 763 F.3d at 1163; *Tommasetti*, 533 F.3d at 1039. Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and

relevant character evidence. *Ghanim*, 763 F.3d at 1163; *Tommasetti*, 533 F.3d at 1039.

Plaintiff testified that before his 2005 infection returned in 2009, his pain was at a six on a 10-point scale and that he now experiences dull pain all the time, with sharp stabbing pains occasionally. Plaintiff testified that he can sit for up to two hours with occasional repositioning. Plaintiff also testified that after two or three hours, he needs to lie down for an hour to relieve pain and pressure, and that he does so a couple of times each day. Tr. 46. Plaintiff further testified that he can comfortably lift 20 pounds and carry it a distance of 20 to 30 feet. Plaintiff described that since his accident in 2005, he uses a cane to walk and stand. Plaintiff stated that he can stand for two hours, and can occasionally stoop, but crouching is difficult. Tr. 48, 50. Plaintiff testified that he tried to work in 2007 as a day laborer, but had a difficult time working due to his disability. Tr. 52.

Plaintiff testified that his last drug use was three and half years ago. Tr. 54. Plaintiff stated that he was in the Portland Rescue Mission New Life program for 11 months when his infection returned in 2009. Plaintiff testified that following his residential antibiotic treatment, he was in a Central City Concern intensive outpatient rehabilitation program for 11 months, and has

been clean ever since.  Tr. 55.  Plaintiff also testified that he no longer takes prescription pain medication.  Tr. 57.

In a Disability Report, plaintiff indicated that he was seeking disability due to arthritis in his pelvis, that he completed grade 10, was in special education classes when in school, and that he has not completed a GED.  Tr. 214.

The ALJ discredited plaintiff's testimony because plaintiff offered inconsistent explanations about his failed work attempts, and his noncompliance with recommended treatment and missed appointments.  For the reasons that follow, I find these reasons, when taken together, do not amount to clear and convincing support for the adverse credibility determination.

In the decision, the ALJ noted that plaintiff attempted at least six jobs between 2007 and 2008, and plaintiff testified that these attempts were unsuccessful because employers were unwilling to hire someone with his disability.  Tr. 16, 39.  The ALJ questioned plaintiff's explanation because at the time plaintiff was attempting work, plaintiff was abusing methamphetamine.

As the ALJ discussed, Dr. Button indicated that in 2010, plaintiff had a positive toxicology screening for cocaine, and that at that time, Dr. Button was concerned about plaintiff's potential abuse of prescription painkillers.  Tr. 579.  A May 26, 2010 treatment note shows that Dr. Button was concerned that plaintiff had several "red flags" indicating actual or potential opiod abuse,

including dishonesty, a prior missed appointment, failing to make appointments within 30 days, a stolen backpack with medications, and failing to follow through with lab work and physical therapy. Tr. 580. Additionally, the ALJ discussed that Dr. Button believed plaintiff was having difficulty "motivating" and was using his parole officer as an excuse not to follow through with treatment recommendations. Tr. 18, 577. Dr. Button's March 5, 2010 treatment note shows that plaintiff denied using illicit drugs since his 2005 accident, however, Dr. Button learned from another physician that plaintiff had admitted to using illicit drugs just six months earlier. Tr. 587. The ALJ's findings are supported by substantial evidence, and the ALJ could reasonably infer that plaintiff was not entirely forthright about the reason his employment attempts ended and his noncompliance with appointments and physical therapy. *Molina*, 674 F.3d at 1113 (noting that inconsistent statements and failure to follow through with treatment are appropriate bases upon which to discredit claimant).

The Commissioner also contends that the ALJ appropriately discredited plaintiff because his subjective limitations are inconsistent with the objective medical evidence. The Commissioner argues that plaintiff's testimony that he needs a cane is undermined by Dr. Hamby's finding that no assistive device is needed. Tr. 47-48, 546, 548. And, the Commissioner highlights plaintiff's testimony that he needs to lie down every day is

inconsistent with Dr. Button's treatment notes, which do not reflect such a complaint from plaintiff. In the decision, the ALJ did note that in May of 2006, plaintiff requested that Dr. Lorber close his workers compensation claim and release him to work without restrictions so that he could pursue employment as a landscaper, from which *I can infer* that the ALJ found plaintiff's unrestricted work release request inconsistent with his current statement that he has been disabled since his accident in 2005. Tr. 17, 637-42. While I agree with the Commissioner that such inconsistencies exist, the ALJ did not specifically rely upon these facts or identify them as a basis for the negative credibility assessment. I cannot uphold the ALJ's negative credibility assessment based on evidence the ALJ did not discuss, or reasons the ALJ failed to provide. *Connett v. Barnhart*, 340 F.3d 873, 874 (9th Cir. 2003)(the court is constrained to review the ALJ's stated reasons).

I likewise reject the Commissioner's contention that the ALJ also relied upon a three year gap in treatment to discredit plaintiff. When discussing plaintiff's medical history, the ALJ indicated that from 2006 to 2009, plaintiff did not seek treatment. However, the ALJ failed to link this gap to the adverse credibility determination. *Id.* Contrary to the Commissioner's suggestion, the ALJ's passing reference is simply not sufficiently specific to permit me to adequately review the ALJ's reasoning on the record

16 – OPINION AND ORDER

before me.  *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)(ALJ's general statement that claimant's testimony unbelievable is insufficient to support adverse credibility determination).

In summary, the ALJ has provided limited reasoning for discrediting plaintiff that is supported by substantial evidence in the record.  However, viewing the record as a whole, I cannot conclude that this reasoning – in and of itself – is clear and convincing support for the adverse credibility determination. *Connett*, 340 F.3d at 874 (the court may only review reasons asserted by the ALJ); *Lingenfelter*, 504 F.3d 1036-37 (ALJ's reasoning only partially upheld was not sufficient basis to support adverse credibility determination).  Accordingly, I conclude the ALJ has erred.

## III. **Lay Testimony**

Lay witness testimony as to a claimant's symptoms or how an impairment affects his ability to work is competent evidence, which the ALJ must take into account.  *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009); *Stout v. Commissioner, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  The ALJ is required to account for competent lay witness testimony, and if it is rejected, provide germane reasons for doing so.  *Valentine*, 574 F.3d at 694.

Plaintiff's father, Douglas L. Brown, testified at the hearing. Mr. Brown testified that he is retired, and his son has lived with him on and off for five years. Tr. 61. Mr. Brown stated that his son can sit for up to an hour and half, then needs to change position. Mr. Brown described that his son works on his laptop by laying on his stomach on the bed, with the laptop on a stool. Mr. Brown stated that his son was happier when he was working. Tr. 64. Mr. Brown testified that his son is limited, and he has to take it easy on his hip.  Mr. Brown further testified that when plaintiff was attempting to work as a day laborer, plaintiff would  work from two to six hours, depending on the nature of the job.  Tr. 65-66.

As the Commissioner acknowledges, the ALJ erred by failing to weigh Mr. Brown's testimony.  Nevertheless, the Commissioner contends that the ALJ's failure to discuss the lay testimony was harmless because Mr. Brown did not describe any limitations beyond those described by the plaintiff, and the ALJ provided clear and convincing reasons to reject the plaintiff's testimony that similarly apply to the lay testimony.  *Molina*, 674 F.3d at 1122. I disagree.

As discussed above, the ALJ appropriately discounted plaintiff's testimony based on his lack of candor concerning the reasons his work attempts were unsuccessful in 2007 and 2008.  This reasoning, however, does not address the limitations described by

Mr. Brown.  For example, Mr. Brown testified that plaintiff lies down to work on his laptop each day, and must frequently reposition himself.  As noted above, the ALJ did not discuss inconsistencies with the medical evidence as a basis to discount plaintiff's testimony.  Therefore, I cannot conclude that the failure to discuss Mr. Brown's testimony was inconsequential to the nondisability determination because his testimony identified limitations the ALJ did not discuss.  *Molina*, 674 F.3d at 1116. Accordingly, the ALJ's error is not harmless.

## IV.  Remand

After finding the ALJ erred, this court applies a three part test to determine whether the case should be remanded for further proceedings, or to calculate and award benefits.  *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014), *Vasquez*, 572 F.3d at 593; *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  The court should grant an immediate award of benefits when these three conditions are met:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose, (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison*, 759 F.3d at 1020.

Where, after evaluating the record as a whole, there are serious doubts that the claimant is, in fact, disabled, the court may

exercise its discretion and remand the case for further administrative proceedings. *Id.* at 1021; *Connett*, 340 F.3d at 876.

On this record, there remain outstanding issues to be resolved and I have serious doubts as to whether plaintiff has been disabled since his alleged onset date. The ALJ failed to resolve the conflicting information between Drs. Button and Hamby with respect to plaintiff's ability to stoop, crouch, crawl, lift, and whether plaintiff must use a cane. The Commissioner argues that even if Dr. Button's limitations are fully credited and included in the RFC, the vocational expert (VE) identified one job without such limitations – hardware assembler, DOT#706.684-074, *available at* 1991 WL 679062. As the Commissioner correctly notes, the job involves no stooping, crouching or crawling, and the lifting requirements (sedentary) do not appear to exceed plaintiff's stated limitations. *See Id.* (showing that stooping, crouching and crawling are "Not Present – Activity or condition does not exist"); Tr. 47 (plaintiff states that he can lift 20 pounds occasionally).

However, the VE also testified that if a claimant were required to use an assistive device (cane), competitive employment may be eliminated if there are pace and production requirements due to the loss of productivity. Tr. 79. I note that Dr. Button prescribed a cane, and that plaintiff testified he has used a cane since his 2005 accident. Tr. 47-48, 577. Thus, if plaintiff's

testimony and Dr. Button's opinion are credited as true, plaintiff would be disabled.

Yet, viewing the record as a whole, I have serious doubts that plaintiff has been disabled since his alleged onset date in 2005. As the ALJ correctly indicated, plaintiff requested that he be released to work without restrictions in May of 2006. Then, as the ALJ also noted, plaintiff did not seek treatment again until September of 2009. From late September through December of 2009, the record readily demonstrates that plaintiff had a very serious infection, with an obviously long and painful recovery. Yet, there is evidence in the record which may cast doubt on plaintiff's credibility that the ALJ failed to discuss. Additionally, it remains unclear whether plaintiff must ambulate with a cane, is capable of performing the jobs identified by the VE, or whether other jobs exist in the national economy that plaintiff can perform. Therefore, on the record before me, I have serious doubts that plaintiff has been disabled since September 2005, and there are outstanding issues that must be resolved before a disability determination can be made.

Based on the foregoing, I exercise discretion under *Connett* and conclude a remand for further proceedings consistent with this Opinion and Order is required to permit the ALJ: (1) to reconsider the opinion Dr. Button and reevaluate the medical testimony; (2) to reconsider plaintiff's testimony; (3) to reconsider the lay

testimony; (4) to consider whether any new findings made by the ALJ alter the evaluation of plaintiff's RFC or affect the decision as to whether plaintiff is capable of performing other work that exists in significant numbers in the national economy, with assistance of a vocational expert if necessary; and (5) if plaintiff is found to be disabled, the ALJ must determine plaintiff's disability onset date.

<u>**CONCLUSION**</u>

For the reasons stated above, the Commissioner's final decision denying benefits to plaintiff is REVERSED and this proceeding is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED this **29** day of OCTOBER, 2014.

*Malcolm F. Marsh*
Malcolm F. Marsh
United States District Judge